CORYDON STANTON *v.* SIMEON LELAND and WARREN LELAND.

The liability of an innkeeper extends to money stolen from the trunk of a guest.

Where the guest, having packed his luggage for departure, locks his room, gives notice thereof to a clerk, and leaves the key of the room with such clerk, at the office; the innkeeper will be responsible for money stolen from a trunk, although a notice may have been brought to the knowledge of the guest, requiring money and valuables to be placed in a safe at the office, during his sojourn at the inn.

An innkeeper, being responsible for the safe keeping of such goods, property, and money in packages, as the guest brings with him to the inn, can rightfully require permission to take the actual custody of money, jewels, and goods of especial value, not required by the guest for his daily use and convenience, and to place them in such safe depository within the inn, as he may provide.—*Per* WOODRUFF, J.

And notice of such requirement being actually given to the guest, orally or by a printed notice furnished to and read by him, it is his duty to conform thereto, and if he do not, and a loss is suffered in consequence, without the actual fault of the landlord or his agents, the landlord is liable for the loss. —*Per* WOODRUFF, J.

A summons issued from the Marine Court, containing only the given name of the plaintiff, may be amended by the clerk of that court, in the presence and under the authority thereof, by inserting the surname, where the defendant is not prejudiced thereby.

A claim against an innkeeper for money stolen at the inn, from the trunk of a guest, is assignable.

THIS action was brought by the assignee of a claim against innkeepers to recover money lost under the following circumstances:

One Hugh Rose, of Charleston, South Carolina, became a guest at the Metropolitan hotel, in the city of New York, of

which the defendants were the proprietors. On reaching the hotel, he made the usual entry of his name in a book at the office, and a room was assigned to him, of which he received the key.

At the head of each page, in the book above mentioned, were plainly printed these words: "Money, jewels, and other valuable packages, must be placed in the safe in the office, otherwise the proprietors will not be responsible for any loss." A similar notice was embodied in a list of regulations posted upon the door of the room, where there was, also, a conspicuous card, printed in crimson letters, as follows: "Notice. Money and valuables must be deposited in the office for safe keeping. If the above request should not be complied with, the proprietors will not be responsible. Simeon Leland & Co." Mr. Rose was examined as a witness for the plaintiff, and admitted, in his testimony, that he observed the notices in the room, but was not certain that the words in the book attracted his attention. He made no deposit of money or valuables at the office, and gave no notice that there was money in his room.

On the sixth of July, two days after his arrival at the hotel, he packed and locked his baggage, consisting of a portmanteau, valise, two trunks, and other articles, and also locked his room, and delivered the key of the latter to a clerk at the office, who hung it up. It was then about two o'clock, P. M. He asked for his bill, stated that his baggage was ready for removal, and that he intended to start for Saratoga by the next conveyance. Dinner having been served, Mr. Rose inquired of the clerk whether his baggage had been brought down, to which the clerk replied in the negative, and stated that the cars for Saratoga would not leave until half after five.

At about four o'clock, a porter of the house apprised him that his room had been broken into. He proceeded up stairs; found the door open and his portmanteau rifled of a purse containing $150 in American coin, and a number of foreign gold and silver pieces, of the value of about $45. The lock of the portmanteau had been broken off, and a chisel lay

Stanton *v.* Leland.

near. The money and coins were not recovered, nor the thief apprehended.

The guest remained until the following day, and afterwards executed and delivered to the plaintiff an assignment of his claim against the proprietors of the hotel, receiving the plaintiff's note for $25, as the consideration.

A summons was issued in the Marine Court, in the name of Corydon, the given name of the plaintiff, his surname being omitted. On the return of the process, all the parties appeared by attorney; and, on the motion of the plaintiff's attorney, the clerk amended the summons by inserting the surname, in pursuance of the direction of the presiding justice.

The trial resulted in an award, by the court below, of judgment in the plaintiff's favor, from which the defendants appealed to this court.

*J. Warren Lawton* and *Wm. G. Larned,* for the defendants.

*Mason S. Brewster,* for the plaintiff.

INGRAHAM, FIRST J.—1. The amendment of the summons was within the power of the court, was ordered by the court, did no harm to the defendants, and is to be regarded by the appellate court as a technical objection, not to be the ground of reversal.

2. The claim for property, whether arising *ex contractu* or *ex delicto,* is assignable. We have lately held, a claim against a common carrier was assignable, and the same rule applies to innkeepers. This point is well settled in all the courts.

3. The defendants claim to be exempt from liability for money lost by robbery in the hotel, and on two grounds; first, because of the notice given to the guests that they will not be liable for valuables and money, unless deposited in the safe; secondly, because, without such notice, an innkeeper is not liable for money stolen out of a trunk, or for any thing beyond necessary articles for a person who is travelling.

*Stanton v. Leland.*

That the carrier or innkeeper cannot limit his liability by a general notice, has been repeatedly adjudged. I need only refer to the cases of *Hollister* v. *Nowlen*, (19 Wend. 234,) and of *Cole* v. *Goodwin & Story*, (19 Wend. 251,) as containing much law on the point, and citing at least sufficient authorities to sustain the decision of the court, that notice, although brought home to the owner, did not relieve the carrier or innkeeper from liability for the safety of their goods; and to *Gould and others* v. *Hill*, (2 Hill's Rep. 623,) that a special acceptance of the goods will not discharge from such liability. Whether he may not, by a special agreement entered into by both parties, restrict such liability, it is not necessary now to inquire.

In some cases of common carriers, the liability has been, both in the English and American courts, so far limited by a notice as to require from the owner a disclosure of the contents of the packages, and in cases of fraud or concealment, with a view to defraud the carrier of his hire, to relieve him from liability to the extent of the intended fraud. But these cases are based upon the supposed right of the carrier to a reward proportionate to the risk. Thus, when the owner informed the carrier that the package contained £200, when, in fact, it contained £450, the carrier was only held responsible, in case of loss, to £200, as his reward was only for that sum. (See several cases cited in the opinion of *Cole* v. *Goodwin et al.*, *supra.*)

Upon the same principle, the case of the *Orange County Bank* v. *Brown*, (9 Wend. 85,) was decided, holding, that a large sum of money, placed in a traveller's trunk, was not within the protection which the law gives to the traveller's baggage.

The notices in this case were, that the defendants would not be liable for any thing of value, unless placed in the safe; and even admitting that they might, by such notice, require the traveller, while he was staying at the hotel, to keep his money in the safe of the establishment, which I do not mean to be understood as adopting as law, yet it could not be that

the traveller, while preparing to start on his journey, should be required still to leave money in the safe until he actually leaves the hotel.    It was not until he was packing his trunks for his journey that he placed the money in them, and as soon as it was so done, the key of the room was given to the proprietor, with the information that the baggage was ready. I think nothing contained in the notices would answer to limit the innkeeper's liability after he received the key, under such circumstances.

It is contended that the innkeeper is not liable for money contained in the baggage, and so brought into the hotel without notice of the same being given by the owner.    In the case of innkeepers, the liability in this respect is more extended than that of common carriers.    They cannot refuse to receive, with the guest, any kind of goods he may bring, but they are bound to receive both, and they are equally liable for the goods while the guest remains.    The innkeeper's compensation is his charge to the guest for his board and lodging, and he receives no additional compensation, whether the goods of the guest are of greater or less value.    The ground, therefore, upon which a common carrier is not responsible for concealment of money, &c., in baggage, viz., that he is defrauded of his reward for the carriage, is not to be found in examining the liability of the innkeeper.

Kent says, the responsibility of the innkeeper extends to all the goods, chattels and moneys of his guest which are placed within the inn.    Again: "It is not necessary that the goods should have been in the special keeping of the innkeeper ; if they be in the inn, that is sufficient to charge him." (2 Kent's Com. 593.)    In *Quinton* v. *Courtney,* (1 Haywood N. C. R. 40,) the innkeeper was held liable for money stolen out of the saddlebags of the guest, who had not given notice of the contents of such bags to the innkeeper.    (See, also, 5 Term Rep. 275 ; 21 Wend. 282 ; 14 J. R. 175.)    It can hardly be necessary to cite authorities to show that the innkeeper is liable for money stolen from the guest, when we look at the necessity of the traveller having money with him

Stanton *v.* Leland.

in travelling, and the like necessity of taking it with him to the inn when he enters it. He is to be protected as to his property while he remains a guest; and as no extra charge can be made, because he carries money, so no exemption from liability can be claimed, if the fact of having money is not disclosed to the innkeeper.

The innkeeper is, I think, liable, whether the guest has the money in his baggage or in the safe of the innkeeper; and where the guest is required to deposit valuables in a safe, during his stay at the inn, even admitting that the innkeeper might, by a notice, so limit his liability, still, where the baggage is prepared for travelling, and has been placed under the care of the innkeeper's servants for that purpose, he is liable, notwithstanding such notice. The liability in such case is the same as it would be on arrival, before the guest's baggage had gone to his room. If stolen then, the innkeeper would be responsible. So after it is prepared for leaving the hotel, the same liability exists, however much in the intermediate time such liability may have been limited by notice.

The judgment should be affirmed.

DALY, J., concurred in affirming the judgment, but filed no opinion.

WOODRUFF, J.—I concur in the result to which the first judge has arrived in this case. After the guest had packed his trunks and portmanteau preparatory to leaving the inn, and had notified the proprietors thereof, and placed the same under their control, by giving up the key to his room, their responsibility for the safekeeping and due delivery of the trunks, &c., with their contents, became full and unqualified; and I know of no rule which, in the absence of any fraud, deception or imposition, exempts the innkeeper in general from responsibility for all the goods and property which the traveller brings with him to the inn.

But the duty of the innkeeper to keep and protect such property, carries with it the right to provide such reasonable

places of deposit within the inn as he may deem most secure; and if the guest will not give up the manual possession of the goods to the innkeeper, to be preserved by him during his stay, in my judgment the traveller takes the risk of loss from any cause happening without the actual fault or negligence of the landlord, or his servants or agents.

And when it appears that the landlord had provided such place of deposit, and the guest had actual notice thereof, and notice that the landlord required valuables to be delivered into his actual custody to be deposited in such place, the guest was bound to conform to this reasonable requirement. He upon whom the absolute duty to preserve and keep rested, had a right to direct that he be suffered to take the actual custody of the goods for the purpose of preservation.

And I think it would be an error to say that this is, in the proper sense of the words, a limitation of the innkeeper's responsibility. It is only a reasonable regulation, recognizing and based upon his full responsibility, as an insurer; and, in my judgment, the right to make the regulation and insist on its observance necessarily result from that responsibility. The protection of the innkeeper by reasonable rules respecting the custody of the goods of the guest while he remains at the inn, is not disfavored in the law, and it is eminently just that he upon whom the responsibility for the safety of the goods doth rest, shall have power to use such guards for that safe keeping as are consistent with the due comfort and convenience of the guest. The clothing of the guest, and articles necessary for his daily use and comfort while remaining, could not, of course, under this view of the subject, be removed from him, so as to interfere with or interrupt that use and convenience. But goods, merchandise and money, in trunks or packages, are, in my opinion, subject to the landlord's reasonable requirement in this respect.

In the present case, the testimony of the guest himself brings home the notice to him in a form equivalent to an actual oral demand by the landlord; and as he saw and read the notices, he was bound to conform to the requirement

contained therein, and deposit the package of money with the landlord.

Had the loss then happened from the neglect of that precaution during his stay at the inn, and before he had given up his room and surrendered the key, and partially placed his trunks, &c., in the defendant's charge, I should have deemed the innkeeper free from responsibility, if free from fault or negligence.

But for the reason first above suggested, I concur in affirming the judgment.

Judgment affirmed.